```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JERRY COLORIO,
                        Petitioner,
                                                    REPORT AND RECOMMENDATION
            v.
                                                    05 CV 4984 (NG)(VVP)
MR. S. HORNBECK
                        Respondent.
------------------------------------------------------------x
```
POHORELSKY, Magistrate Judge:

Judge Gershon has referred to me for a Report and Recommendation, pursuant to 28 U.S.C § 636(b)(1), Jerry Colorio's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. The petition, which contests his state court conviction for assault and menacing, presents claims based on ineffective assistance of counsel, prosecutorial misconduct, and an evidentiary issue. For the reasons discussed below, the undersigned respectfully recommends that the instant petition be DENIED in its entirety.

## BACKGROUND

On June 20, 2002, a jury found the petitioner guilty of attacking and seriously injuring Jacqueline Sanchez and threatening to attack Subhi Widdi in what appeared to be a fit of road rage. Specifically, the jury convicted the petitioner of assault in the second degree and menacing in the second degree. After his conviction was affirmed in state court on direct appeal, the petitioner sought habeas relief from this court. To the extent they are relevant in resolving the instant petition, the court sets forth the following facts, adduced from transcripts of the petitioner's trial and related proceedings, and from various submissions filed by the petitioner and respondent during the state court proceedings and in this court.

I. THE ATTACK AND ARREST

On the evening of June 18, 2001, Ms. Sanchez was attacked as she sat in the passenger seat of a van by an assailant who slashed her face and lacerated her hands with a box cutter. The assailant then attempted to attack the van's driver, Mr. Widdi. After the assailant fled by car, Ms. Sanchez sought medical attention and Mr. Widdi reported the attack to the police.

As part of the police's investigation into the incident, the victims supplied the police with details identifying the assailant, including his burgundy shirt and a possible facial scar. The police assembled a photo array from which Ms. Sanchez and Mr. Widdi each separately identified the petitioner. On June 20, 2001, the petitioner surrendered to the police and was placed in a lineup from which Ms. Sanchez and Mr. Widdi identified him as their attacker. Five days later, after the two victims testified before a grand jury, the petitioner was indicted and arrested for the attack on Ms. Sanchez and the attempted attack on Mr. Widdi.

II. PRE-TRIAL AND TRIAL PROCEEDINGS

On March 18, 2002, the petitioner moved to dismiss the indictment under New York Criminal Procedural Law § 210.35, arguing that the prosecutor engaged in misconduct during the grand jury proceeding. The petitioner asserted that the prosecutor failed to inform the grand jury of possible inconsistencies in Mr. Widdi's testimony, including Mr. Widdi's description of the attacker's facial scar, which the petitioner lacked, and a statement by Mr. Widdi to the police that he "possibly" thought but was "not sure" that the person he identified in the lineup was the attacker. After reviewing the grand jury testimony and the police lineup report, the court denied the motion on the basis that Ms. Sanchez's testimony provided sufficient evidence to sustain the

indictment and that inconsistencies in Mr. Widdi's testimony did not vitiate the integrity of the proceedings.

On June 2, 2002, a pretrial *Wade* hearing[1] was held on the petitioner's motion to suppress the photo array and lineup identifications as well as in-court identifications of the petitioner by the victims. The petitioner claimed that the police identification procedures were unduly suggestive, given that he was taller than other individuals in the lineup and was the only participant wearing a burgundy shirt. The court agreed that the procedures were tainted and accordingly suppressed evidence relating to the lineup and photo array. At the request of both parties, the court held an independent source hearing[2] the following day to determine whether in-court identifications would be proper. As a result of this hearing, the court concluded that, because both Ms. Sanchez and Mr. Widdi had sufficient opportunity to observe the assailant the evening of the incident at a close range, it would permit their in-court identifications of the petitioner.

The case proceeded to trial, after which a jury found the petitioner guilty of assault in the second degree and menacing in the second degree. On July 23, 2003, the court sentenced the petitioner as a predicate violent felony offender to concurrent terms of imprisonment of six years for the assault charge, with five years post-release supervision, and one year for the menacing charge.

---

[1] " 'The purpose of a *Wade* hearing is to determine [before] the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification.' " *Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006) (*citing Twitty v. Smith*, 614 F.2d 325, 333 (2d Cir. 1979)).
[2] "The purpose of an independent source hearing is to determine whether identification testimony made by a witness under suggestive circumstances has a separate independent source that would render it reliable." *Castillo v. Walsh*, 443 F.Supp.2d 557, 569 (S.D.N.Y. 2006) (emphasis omitted).

III.   DIRECT APPEAL

In July 2004, the petitioner challenged his conviction by direct appeal to the Appellate Division, Second Department on the grounds that (1) he was denied due process of law because the prosecutor failed to present exculpatory evidence to the grand jury; (2) he was denied effective assistance of counsel because his defense counsel failed to raise the latter prosecutorial misconduct issue at trial or at pre-trial hearings and failed to seek inspection of the grand jury minutes; and (3) the trial court erred by allowing in-court identification of him without an independent source hearing. On March 21, 2005, the Appellate Division unanimously affirmed the conviction finding that the prosecutor's actions did not render the grand jury proceeding defective and that the remaining claims lacked merit. *People v. Colorio*, 792 N.Y.S.2d 138 (2d Dep't 2005).

In a letter application, the petitioner subsequently sought leave to appeal the decision of the Appellate Division on the sole claim of prosecutorial misconduct. On May 27, 2005 the New York Court of Appeals denied the petitioner leave to appeal. *People v. Colorio*, 4 N.Y.3d 885 (2005) (unpublished table decision).

IV.   HABEAS CORPUS PETITION

On September 9, 2005, the petitioner filed the instant petition for a writ of habeas corpus, asserting three claims: (1) that he was denied due process of law because the prosecutor failed to present exculpatory evidence to the grand jury; (2) that he was denied effective assistance of counsel because his defense counsel failed (a) to contest alleged instances of prosecutorial misconduct before the grand jury and (b) to seek inspection of the grand jury minutes; and (3) that the lower court erred by allowing evidence of an in-court identification of

the petitioner without an independent source hearing. As discussed below, the petitioner failed to properly exhaust state remedies for two of his three claims, rendering this court unable to review the merits of his petitioner other than to deny relief.[3]

## DISCUSSION

I. STATE COURT EXHAUSTION

The exhaustion requirement prohibits the granting of an application for a writ of habeas corpus unless the petitioner has exhausted the remedies available in the courts of the state in which he or she was convicted, *see* 28 U.S.C § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), and extends to every federal habeas claim alleged by the petitioner, *see Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994). In other words, the existence of *any* unexhausted claim in a habeas petition – a so-called "mixed petition" – requires dismissal of the entire petition. *Rose v. Lundy*, 455 U.S. 509, 522 (1982).

Proper exhaustion "requires . . . that state prisoners give state courts a *fair* opportunity to act on their claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing 28 U.S.C. § 2254(c)) (additional citations omitted). Thus, a petitioner is not deemed to have exhausted the available state remedies if he or she has the right under state law to raise, by any procedure, the question presented. 28 U.S.C. § 2254(c). This has been interpreted by the Supreme Court to require the invocation of "one complete round of the State's established appellate review

---

[3] On October 28, 2005, after filing the writ of habeas corpus, the petitioner sought to vacate his conviction under section 440.10 of New York's Criminal Procedure Law on grounds of prosecutorial misconduct, ineffective assistance of counsel; and due process violations. The New York Supreme Court denied the motion, finding it was precluded from reviewing the specific issues as to ineffective assistance because the petitioner had failed to raise them on direct appeal. (*See* Chung, J., Order, No. 5066/01, March 16, 2006.)

process," including an application to "a state court of last resort when that court has discretionary control over its docket." *O'Sullivan*, 526 U.S. at 843, 845.

Moreover, the exhaustion requirement is not satisfied until the petitioner has "fairly presented" the federal claim to the highest court of the state. *See Picard*, 404 U.S. at 275 ("We emphasize that [for purposes of exhaustion] the federal claim must be fairly presented to the state courts."). A claim may be "fairly presented" to the state courts if "the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 192 (N.Y. 1982) (quoting *Picard*, 404 U.S. at 278) (additional citations omitted). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.*

Only one of the petitioner's claims has been properly exhausted. While the petitioner raised all three claims on direct appeal, after the Appellate Division denied the appeal he sought leave to appeal to the Court of appeals only as to the claim of prosecutorial misconduct. The ineffective assistance and independent source hearing claims, both of which the petitioner also seeks to present here on habeas review, thus were not presented to the "state court of last resort" as a means of completing "one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 843, 845. With a combination of exhausted and unexhausted claims, the petition here falls under the category of a "mixed-petition" and is subject to dismissal on that basis. *See Rose,* 455 U.S. at 552.

Nevertheless, because the court ultimately finds all the claims presented here wholly without merit, it proceeds to consider the petition on its merits. Under 28 U.S.C. § 2254(b)(2), district courts are authorized to address the merits of a habeas application, despite non-

exhaustion, if the inquiry results in a denial of the petition.[4]  The Second Circuit has not yet established a standard for triggering § 2254(b)(2) review.  *See Brown v. State of New York*, 374 F. Supp. 2d 314, 318 (W.D.N.Y. 2005).  The majority of courts in this circuit have followed a "patently frivolous" standard, *id.* (citing *Naranjo v. Filion*, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (Peck, Mag. J.) (collecting cases)) (footnote omitted), while a minority have exercised § 2254(b)(2) discretionary review when " 'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' " *Hernandez v. Lord*, No. 00-CIV-2306, 2000 WL 1010975, at *4 n.8 (S.D.N.Y. Jul. 21, 2000) (Peck, Mag. J.) (collecting and analyzing cases).  The unexhausted grounds for which the petitioner seeks habeas relief fail either standard, as they are both patently frivolous and entirely meritless.

    II.       STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254, requires that federal courts "entertain" applications for habeas relief "only on the ground that [a state prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The primary significance of AEDPA resides in its mandate that federal courts apply a deferential standard of review for habeas claims that have been adjudicated on the merits in state courts.  *See* 28 U.S.C. § 2254(d); *see also Eze v. Senkowski*, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the *habeas* petitions of

---

[4]28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

state prisoners.'") (quoting *Lainfiesta v. Artuz*, 253 F.3d 151, 155 (2d Cir. 2001)) (additional citation omitted).

Under this narrow scope of review, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in State court only if it concludes that the adjudication of the claim "resulted in a decision that was [1] contrary to, or involved an unreasonable application of, clearly established Federal law . . . or [2] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *accord Rosa v. McCray*, 396 F.3d 210, 219 (2d Cir. 2005); *Castro v. Lewis*, 03-CV-5480, 2004 WL 2418319, at *2 (E.D.N.Y. Oct. 29, 2004) (Gleeson, J.) ("The Antiterrorism and Effective Death Penalty Act . . . has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits.") (citation omitted). "A state court adjudicates a claim 'on the merits' for purposes of § 2254(d) when it '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.'" *Serrano v. Fischer*, 412 F.3d 292, 296 (2d Cir. 2005) (quoting *Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004)).

III. THE PETITIONER'S CLAIMS

    A. <u>Prosecutorial Misconduct During Grand Jury Proceedings</u>

The petitioner claims that he was denied due process because the prosecutor failed to inform the grand jury of exculpatory statements. Specifically, the petitioner asserts that the prosecutor did not submit to the grand jury the initial description given by Mr. Widdi to the

-8-

police, in which he stated that the attacker had a scar on his face. This omission, the petitioner argues, impaired the grand jury's ability to properly evaluate Mr. Widdi's testimony.

Allegations regarding improprieties of state grand jury proceedings, including those related to alleged prosecutorial misconduct, however, are not cognizable on habeas review. *See Montalvo v. Annetts*, No. 02 Civ. 1056, 2003 WL 22962504, at *17 (S.D.N.Y. Dec. 17, 2003) (Mag. J. Peck) (collecting cases). This is so because

> the petit jury's . . . guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*United States v. Mechanik*, 475 U.S. 66, 70 (1986); *accord Lopez v. Reilly*, 865 F.2d 30, 32 (2d Cir. 1989) ("The reasoning of *Mechanik* clearly applies here. If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court."); *see also Jones v. Keane*, 250 F. Supp. 2d 217, 236, (W.D.N.Y. 2002) ("With regard to the prosecutor's cross-examination of Jones before the second Grand Jury, the Second Circuit has held that 'a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment,' including prosecutorial misconduct before the grand jury.") (quoting *United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996)). This claim, therefore, is wholly without merit.

    B.  <u>Ineffective Assistance of Counsel</u>

The petitioner bases his ineffective assistance claim on two grounds, namely that counsel failed (1) to raise issue with respect to the same grand jury defects upon which his prosecutorial misconduct claim is based and (2) to file a motion to inspect the minutes of the grand jury

proceeding. Because both grounds lack all factual support, the petitioner's claim entirely lacks merit, and borders on frivolous.

The Sixth Amendment requires that a criminal defendant have effective assistance of counsel for his or her defense. *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). The benchmark for judging effectiveness of counsel is whether counsel's conduct undermined the proper functioning of the adversarial process to the point that the trial cannot be relied on as having produced a just result.[5] *Id.* at 686. To prevail on an ineffective assistance claim, a petitioner must establish (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense with reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.* at 687-688; *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006) (reciting *Strickland* standard). The performance and prejudice prongs may be addressed in either order, and if petitioner fails to make a showing as to either of the two prongs, a court may dispose of the claim without further inquiry. *Strickland,* 466 U.S. at 697; *Flax v. Kelly*, No. 99-CV-6123CJS, 2003 WL 23350427 at *9 (W.D.N.Y. Oct. 6, 2003) (reciting *Strickland* standard).

---

[5]To be clear, ineffective assistance challenges apply to the entirety of counsel's representation to the extent that it deprives a defendant of a fair trial and thus encompass claims such as failure to make reasonable strategic decisions including the decisions counsel makes in connection with the pre-trial stages of litigation. *Strickland*, 466 U.S. at 690-91. *See Dixon v. McGinnis*, No. 06 Civ. 0038(VM), 2007 WL 1771500, at *3-4 (S.D.N.Y. June 18, 2007) (where habeas corpus petitioner claimed ineffective assistance on the grounds that counsel failed to secure his right to testify before the grand jury and failed to file a timely motion for dismissal of the indictment)*; Bedell v. William,* No. CV-06-0121(BMC), 2007 WL 1655771, slip op. at *1-2 (E.D.N.Y. June 5, 2007) (where the ineffective assistance claim supporting a habeas corpus petition was made on the grounds that counsel failed to seek a *Huntley* hearing).

Here, the petitioner fails to satisfy both the performance and prejudice prongs of the *Strickland* standard by a wide margin. As to the petitioner's contention that counsel was ineffective because he failed to challenge various alleged improprieties associated with the grand jury proceeding, this assertion is flatly contradicted by the record. As discussed above, counsel for the petitioner sought to challenge the validity of the indictment on prosecutorial misconduct grounds by filing a motion to dismiss the indictment, albeit an unsuccessful one. (Resp. Br. Ex. D.) The assertion that counsel was ineffective for failing to seek inspection of grand jury minutes is likewise contradicted by the fact that attached to petitioner's motion to dismiss the indictment is an excerpt of the grand jury proceedings. Moreover, the motion quotes and summarizes grand jury testimony. The contents of the motion to dismiss the indictment establish that trial counsel had indeed inspected the grand jury minutes. (Resp. Br. Ex. D.)[6] It further bears noting that the court considered the grand jury testimony in its order denying relief. Specifically, the trial court stated in its order that it had reviewed the grand jury testimony in making its determination that the allegations of the prosecutorial misconduct were unsupported. (Resp. Br. at Ex. F.) ("A review of the Grand Jury testimony and police lineup report leads this Court to deny defendant's motion as there is nothing contained therein to support the allegations of improper prosecutorial

---

[6]Under New York law, a defendant is permitted to move for "an examination by the court and the defendant of the stenographic minutes of a grand jury proceeding resulting in an indictment for the purpose of determining whether the evidence before the grand jury was legally sufficient to support the charges or a charge contained in such indictment." McKinney's N.Y. CRIM. PROC. LAW § 210.30(2). Courts have construed this provision to allow inspection when prosecutorial misconduct is claimed to be grounds for dismissal of the indictment. *See e.g., People v. Grant*, 2007 WL 2212684, *1 (Sup. Ct. N.Y. Cty. 2007) (granting defendant's motion to inspect the jury minutes where defendant moved dismiss the indictment based on prosecutorial misconduct); *People v. Jones*, 595 N.Y.S.2d 869, 870 (Sup. Ct. Queens Cty. 1993) (granting defendant's motion to inspect grand jury minutes and dismiss the indictment based on, *inter alia*, prosecutorial misconduct); *People v. Phipps,* 565 N.Y.S.2d 506, 506 (1st Dep't 1991) (noting that the trial court had granted defendant's motion to inspect grand jury minutes where the defendant had moved to dismiss the indictment based on prosecutorial misconduct).

conduct . . ."). Thus, the substance of the petitioner's ineffective assistance claim is contradicted by the record, which establishes that counsel filed a motion to dismiss the indictment, and in doing so, had access to the grand jury minutes. Accordingly, the petitioner's claim is entirely without merit and demonstrates neither prejudice to the petitioner nor deficient performance on the part of his trial attorney.

### C. The Independent Source Hearing

The petitioner's final claim is that the trial court erred when it allowed in-court identifications of the petitioner without holding a prior independent source hearing. The petitioner's claim once again contradicts the record, which establishes that the trial court did indeed conduct an independent source hearing.

As an initial matter, the court notes that challenges to state court evidentiary determinations, insofar as they seek to relitigate a matter of state law, are not cognizable on habeas review. The Supreme Court in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), also considering a state law evidentiary issue in the federal habeas context, spoke directly to this: "[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Rather, the court's role here is limited to determining whether the petitioner's conviction was secured in violation of federal constitutional or statutory law. *Id.* at 68 (citations omitted). In the context of a challenge to state court evidentiary rulings, habeas relief is available "only where the petitioner 'can show that the error deprived [him] of a *fundamentally fair* trial.'" *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988)).

The petitioner is unable to satisfy this standard, since there is no indication that the complained-of error even occurred. While the trial court did initially decide against conducting an independent source hearing despite having suppressed evidence of lineup identifications (at a separate *Wade* hearing), it reversed course after being asked to reconsider its decision by both defense counsel and the prosecutor.[7] An independent source hearing was subsequently held on June 4, 2002, at which the trial court ruled that the prosecution would be permitted to elicit in-court identifications from the witnesses. (Resp. Ex. A. Vol. II, Tr. 98.) The petitioner's claim based on the trial court's purported failure to hold such a hearing is therefore wholly without merit.

## CONCLUSION

For the foregoing reasons, the court respectfully recommends that the petition for a writ of habeas corpus be denied in its entirety. Since the petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability should not issue. *See* 28 U.S.C. § 2253(c)(2).

*   *   *   *   *

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049,

---

[7] The trial court based its initial decision to forego an independent source hearing because it found no potential that the suggestive lineup procedures would taint any in-court identification that the witnesses might make. (Resp. Ex. A. Vol I, Tr. 85-86.)

1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**SO ORDERED:**

*/s/ Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
      March 2, 2009